THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RHONDA L. BOYD, Defendant-Appellant.

Second District    No. 2—96—0690

Opinion filed September 16, 1997.—Rehearing denied October 22, 1997.

Steven A. Greenberg, of Steven A. Greenberg, Ltd., of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kevin Sweeney, of Calumet City, for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Rhonda L. Boyd, was charged by indictment with one count of deceptive practices (720 ILCS 5/17—1(B)(d) (West 1994)). Following a bench trial, the trial court found defendant guilty, ordered her to pay $3,541.66 in restitution, and sentenced her to 90 days' periodic imprisonment and two years' probation. We affirm.

On January 24, 1995, defendant opened a checking account for her business, Nutrition Plus, Inc., at the Downers Grove branch of Superior Bank, FSB (Superior). In the days that followed, defendant issued and deposited into the Superior account three checks drawn on Nutrition Plus' NAB Bank account. On the morning of January 30, 1995, using money withdrawn from the Superior account, defendant obtained three cashier's checks for $1,668, $2,211, and $31,000, respectively. Later that day, after learning that Nutrition Plus' NAB account was closed, Superior ordered its security manager, John Simmons, to retrieve the cashier's checks. Mr. Simmons located defendant at Nutrition Plus' Naperville office, retrieved one ($31,000) of the three cashier's checks, and informed defendant that Superior had closed Nutrition Plus' account and that defendant was not to write any more checks on that account.

On March 29, 1995, defendant wrote a $21,500 check drawn on the closed Superior account and delivered that check to NBD Bank's senior teller, Francine Podlasek, for deposit into Nutrition Plus' NBD account. Shortly after defendant deposited the $21,500 check, NBD learned that the Superior account was closed. NBD reported the transaction to the local police.

Detective Kenneth Boehm of the Woodridge police department called defendant to discuss NBD's allegations. During the conversation, defendant admitted to depositing the $21,500 check into the NBD account and to knowing that Nutrition Plus' Superior account was closed when she made the deposit. Defendant explained to Detective Boehm that the deposit had been a mistake, that she had been expecting an insurance settlement that did not materialize, and that she intended to make restitution to NBD. Detective Boehm gave de-

fendant one week to make the restitution. During that week, defendant did not contact Detective Boehm. Detective Boehm then made several attempts to contact defendant without success.

On May 5, 1995, Detective Boehm arrested defendant and charged her with deceptive practices (720 ILCS 5/17—1(B)(d) (West 1994)). Following her arrest, defendant executed a written statement in which she again admitted to depositing the $21,500 check into the NBD account.

On March 28, 1996, defendant was found guilty of deceptive practices (720 ILCS 5/17—1(B)(d) (West 1994)). The trial court denied defendant's motion in arrest of judgment, and this appeal followed. On appeal, defendant challenges the sufficiency of the indictment and the sufficiency of the evidence. Defendant does not question the propriety of her sentence.

■ We turn to defendant's first argument on appeal concerning the sufficiency of the indictment. Section 17—1(B)(d) of the Criminal Code of 1961 (Criminal Code) states that a person commits deceptive practices when, with intent both to defraud and to obtain control over property, she issues or delivers a check "knowing that it will not be paid by the *depository*." (Emphasis added.) 720 ILCS 5/17—1(B)(d) (West 1994). In defendant's indictment, however, the State alleged that defendant, with the intent to defraud and to obtain control over certain property of NBD, issued a check "knowing said check would not be paid by the *depositor*." (Emphasis added.) Because the language of the indictment does not mirror the language of the statute, defendant argues that the indictment fails to state an offense and therefore is void.

■ Defendant's argument is without merit. Where, as here, defendant first attacks the indictment in her motion in arrest of judgment, it is not enough to argue only that the indictment fails to state an offense. Rather, the defendant also must show that the indictment (1) prejudiced her defense preparation, or (2) is so ambiguous as to create the potential for double jeopardy. 725 ILCS 5/116—2(c) (West 1994).

In this case, defendant argues only that the indictment fails to state an offense. Defendant has never claimed that the State's inadvertent use of the word "depositor" prejudiced her defense preparation. Moreover, we do not find that defendant's defense preparation was prejudiced by the indictment's wording. Very early in the trial, defense counsel objected to a series of questions posed to Ms. Podlasek regarding defendant's conduct following the deposit of the $21,500 check. In support of his objection, defense counsel presented two Illinois Appellate Court decisions discussing whether subsequent

acts can be used to show intent where the defendant is accused of issuing bad checks in violation of section 17—1(B)(d) of the Criminal Code. In addition, defense counsel stated:

"If she went back to the bank that day, a day later, five weeks later, that conduct simply has nothing to do with whether she is guilty of the offense charged, *which is in this particular case the issuing of the check.* She is not charged with somehow making the subsequent withdrawal and her intent must be established, Judge, *under all of the case law under deceptive practices* at the time that the check was deposited in the bank." (Emphasis added.)

This statement, combined with defense counsel's frequent objections and thorough cross-examinations, demonstrates that defendant fully understood the nature of the charged offense and that the State's inadvertent use of the word "depositor" in the indictment did not prejudice defendant.

■ Defendant also has never claimed that the State's inadvertent use of the word "depositor" created the potential for double jeopardy. Indeed, such an argument would be frivolous. Under Illinois law, a deceptive practices indictment is sufficient for purposes of double jeopardy if it sets forth the location at which defendant issued the check, the date on which defendant issued the check, and the amount of the check. See *People v. DiLorenzo*, 169 Ill. 2d 318, 325 (1996); *People v. Burke*, 164 Ill. App. 3d 468, 474 (1987). In this case, defendant's indictment charged that, on March 29, 1995, defendant attempted to defraud NBD Bank in Woodridge, Illinois, by issuing to Francine Podlasek a $21,500 check drawn on Superior Bank. Thus, defendant's indictment includes the amount of the check, the date of issue, and the location of issue. In addition, the trial court record, which includes a complete trial transcript, consists of several hundred pages of detailed testimony, exhibits, and pleadings that leave no ambiguity as to the conduct for which defendant was convicted. Between the specificity of the indictment and the completeness of the record, we are confident that, if indicted for the same offense, defendant would be able to assert successfully a double jeopardy defense. See *DiLorenzo*, 169 Ill. 2d at 325.

Because the indictment charging defendant with deceptive practices neither prejudiced defendant's defense preparation nor created the potential for double jeopardy, we hold that the State's inadvertent use of the word "depositor" did not render the indictment deficient. See 725 ILCS 5/116—2(c) (West 1994).

■ Defendant also argues that the indictment fails to charge an offense because, under section 17—1(B)(d), it is not a crime to deposit a bad check. Section 17—1(B)(d) makes it a crime knowingly to issue

a bad check to obtain control over property. 720 ILCS 5/17—1(B)(d) (West 1994). Defendant argues that one does not obtain control over property simply by depositing a check into one's bank account. Rather, control occurs only after one withdraws the money from the account. Because the State alleged only that defendant deposited the check into Nutrition Plus' account, defendant contends that the indictment failed to charge her with a crime.

We disagree. The facts of this case are similar to those presented in *People v. Brenner*, 135 Ill. App. 3d 877 (1985). In *Brenner*, the defendant knowingly deposited two bad checks into his stock trading account. *Brenner*, 135 Ill. App. 3d at 880. Shortly after depositing the checks and before the checks were dishonored, the defendant began trading on his account. *Brenner*, 135 Ill. App. 3d at 880. The defendant quickly accumulated substantial losses, and the brokerage house closed his account after learning that his checks would not be honored. *Brenner*, 135 Ill. App. 3d at 880-81.

The Appellate Court, First District, affirmed the defendant's deceptive practices conviction and held that the defendant committed the crime at the time he deposited the checks. *Brenner*, 135 Ill. App. 3d at 883-84. The court explained that, when he deposited the checks, defendant (1) knew the checks would not be paid, and (2) obtained the ability to trade on his account. *Brenner*, 135 Ill. App. 3d at 883-84. Although the court considered the fact that the defendant actually began to trade on the account, it did so only as evidence of defendant's intent to defraud at the time of the deposit. *Brenner*, 135 Ill. App. 3d at 883-84. The court held that the failure to have sufficient funds is *prima facie* evidence of intent to defraud. *Brenner*, 135 Ill. App. 3d at 884. It follows, therefore, that once a bad check is deposited it is evidence of an intent to defraud and to obtain control.

In this case, the indictment charged defendant with the identical conduct for which the defendant in *Brenner* was convicted. Specifically, the indictment alleged that, when defendant deposited the $21,500 check into Nutrition Plus' NBD account, she (1) knew that the check would not be honored; (2) intended to defraud NBD; and (3) intended to obtain control over NBD's property. The State's failure to allege that defendant withdrew money from the NBD account is immaterial because, like *Brenner*, defendant obtained control over the money as soon as she deposited it. Accordingly, we hold that the indictment properly charged defendant with deceptive practices.

■ Defendant next argues that the trial court erroneously convicted her of a felony because the indictment did not charge a felony offense. Under section 17—1(B), it is a misdemeanor to use a bad check to obtain control over property valued at $150 or less. 720

ILCS 5/17—1(B) (West 1994). If the value of the property exceeds $150, the offense is a felony. 720 ILCS 5/17—1(B) (West 1994). Defendant again argues that, with checks, control occurs only after one withdraws money from the account into which the check was deposited. Defendant claims that, because the State alleged only that defendant deposited the check and not that defendant withdrew money from the account, the State failed to allege the value of the property over which defendant obtained control. Defendant contends that, in the absence of a specific allegation that defendant obtained control over property valued in excess of $150, the indictment failed to charge a felony.

As discussed above, defendant's suggestion that she did not obtain control over the money in Nutrition Plus' account at the time of the deposit is erroneous. See *Brenner*, 135 Ill. App. 3d at 883-84. Under *Brenner*, when the State alleged that defendant deposited a $21,500 check into the NBD account, the State alleged that defendant obtained control over that $21,500. We therefore hold that the State properly alleged the elements of the felony offense and that defendant's felony conviction was valid.

■ Finally, defendant argues that the State failed to prove beyond a reasonable doubt that, when she deposited the $21,500 check, defendant intended to defraud NBD. In support of her contention, defendant relies upon her statement to Detective Boehm that, when she deposited the $21,500 check, she was expecting an insurance settlement that did not materialize and that the settlement would have covered the check. Defendant contends that her statement to Detective Boehm (1) provides an innocent explanation for her deposit of the $21,500 check, and (2) must be taken as true because the State offered no evidence to rebut defendant's assertions.

Our standard of review on a challenge to the sufficiency of the evidence is whether, after reviewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Lovings*, 275 Ill. App. 3d 19, 22 (1995). We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Lovings*, 275 Ill. App. 3d at 22.

In this case, defendant's account of her elusive insurance settlement is not the entire story. On the contrary, Officer Boehm testified that, in addition to explaining the mishap with the insurance settlement, defendant admitted that, at the time she deposited the $21,500 check, she knew that her Superior account was closed. In addition, Mr. Simmons testified that, on January 30, 1995, he met with defen-

dant and advised her that Superior was closing her account and that she was not to write any additional checks on that account. Significantly, neither Officer Boehm's nor Mr. Simmons' testimony was rebutted or contradicted.

Given Detective Boehm's and Mr. Simmons' uncontradicted testimony, it was reasonable to conclude that, at the time defendant deposited the $21,500 check, she knew that the Superior account was closed. It was therefore plausible to conclude that defendant's only purpose for writing a $21,500 check on a closed account was to defraud NBD.

Although defendant insists that her story regarding the insurance settlement provided an innocent explanation for this whole episode, we fail to see the connection. To be sure, defendant's story might explain why defendant did not have the money to cover the check, but it does not explain why defendant chose to write the check on an account that she knew was closed. The conclusion that defendant intended to defraud is fully supported by the evidence.

Accordingly, we hold that the evidence was sufficient to support the trial court's conclusion that, when she deposited the $21,500 check, defendant intended to defraud NBD.

For the reasons set forth above, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.