24 November 1999

No. 2--98--0645

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) No. 97--CF--2982

v. ) 

) 

PAUL C. WETT, ) Honorable

) George Bridges,

Defendant-Appellant.  ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Following a jury trial, defendant, Paul C. Wett, was convicted of violating an order of protection (720 ILCS 5/12--30(a)(1) (West 1996)).  He was sentenced to 18 months' probation and 9 months' periodic imprisonment.  He appeals, arguing that (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied a fair trial when the prosecutor asked him an improper question on cross-

examination; and (3) his crime was improperly classified as a felony.  We affirm.

Defendant was charged with violating an order of protection by making harassing contact by telephone.  The indictment stated that his crime was enhanced by the fact that defendant had previously been convicted of violating an order of protection.  See 720 ILCS 5/12--30(d) (West 1996).

At trial, the State introduced the following evidence.  Joan  Wett testified that she was married to defendant from 1983 to 1988.  After their divorce in 1988, Joan and defendant reconciled and lived together until 1996.  Joan had obtained custody of the couple's three children.

On August 28, 1997, Joan obtained an order of protection against defendant.  She sought that order because defendant had repeatedly called, harassed, and threatened her.  She was present when defendant was served with the order.  The order stated that defendant was to have no contact with Joan.  He was granted visitation with his children every other weekend and was permitted to call Joan's residence to speak with them at 8 p.m. on any day of the week.  The order would be effective until August 28, 1999.

Joan testified that, on October 13, 1997, between 6:30 and 7 p.m., she received a telephone call from defendant.  He screamed, "F------ whore, I want my kids," and, "I want my f------ kids, you f------ whore."  Joan told him that she would call the police if he called again in violation of the order of protection, and she hung up.  The next morning, defendant called again, screaming, "Listen, you f------ whore, I want to speak with my kids."  Joan told him to stop calling and hung up.  Again he called; he said, "whore," and Joan hung up.  Defendant called three or four times more, and Joan finally disconnected her phone.

On cross-examination, Joan denied that it was her nine-year-

old daughter, Katie, who called on the evening of October 13.  Joan did not recall defendant mentioning anything about the purchase of insurance for their children.  She acknowledged that the children were not insured.  She did not recall whether the children were with her or with defendant on October 13.

Katie Wett, daughter of Joan and defendant, testified on defendant's behalf.  She stated that she was at defendant's house on October 13, 1997.  She called Joan that evening, and defendant told her to ask Joan if she had insurance.  Katie did so.  She then gave the phone to defendant and heard him ask Joan if she had insurance.

On cross-examination, Katie testified that she did not remember exactly what defendant said to Joan or how long he spoke.  She did not remember anything else that happened on that day, during the previous weekend, or during the following weekend.  Defendant told her that she was going to testify in court but did not tell her what he wanted her to say.

Judith Wett, defendant's mother, testified that defendant lived with her on October 13, 1997.  At that time, defendant's children had no health insurance, and defendant had arranged for an insurance salesman to visit him at 7 p.m.  At approximately 6:30 p.m., Katie called Joan, and defendant told Katie to ask Joan what kind of insurance he should order.  Katie got "antsy" and handed the phone to defendant.

Judith heard defendant explain to Joan that he needed to know how much insurance she could afford, as she would be responsible for half of the cost.  Defendant took the phone away from his ear, and Judith heard a loud voice coming through it.  Defendant said, "Now, please calm down."  Judith suspected that someone other than Joan was on the line because defendant said, "Well, I really wasn't talking to you."  Defendant hung up.  Judith did not hear defendant use profanity or raise his voice during the course of the call. Upon Judith's suggestion, defendant called the police.

Defendant testified that, on October 13, 1997, his children were at his house for their weekend visitation.  He had scheduled a meeting for 7 p.m. with a representative of an insurance company to discuss the procurement of insurance for defendant's children.  At approximately 6:30 p.m., Katie called Joan because she wanted to spend additional time with defendant.  Defendant asked Katie to find out what Joan could afford to pay for an insurance policy.  Katie did not understand his request and gave the phone to him.

Defendant explained to Joan the reasons for his inquiry.  He heard Joan's boyfriend screaming in the background.  Joan's boyfriend got on the line and asked why defendant was calling.  Defendant said, "I wasn't talking to you," hung up, and called the police.  Defendant testified that he was "very nice and polite" and "would never say any bad words."  He denied that he called Joan a whore or otherwise harassed her.

Defendant testified that he did not place a call to Joan's home on the morning of October 14.  He attempted to call at 8 p.m. to speak to his children but got no answer.

On cross-examination, the following exchange occurred:

"Q. You indicated that you didn't call your [ex-]wife a whore on October 13th, is that right?

Yes.

But you do call your [ex-]wife a whore, don't you?

No."

The court sustained defense counsel's objection but denied his motion for a mistrial.

Outside the jury's presence, the trial court admitted a certified statement of conviction showing that, on November 22, 1996, defendant was convicted of violating a different order of protection.  Over defendant's objection, the court stated that the prior conviction enhanced to a felony the crime charged in the current case.

The jury found defendant guilty, and the court denied defendant's motion for a new trial.  The court's judgment classified defendant's offense as a Class 4 felony.  Defendant timely appeals.

Defendant first argues that the State did not prove him guilty beyond a reasonable doubt.  This argument must fail if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Boyd
, 292 Ill. App. 3d 94, 100 (1997).

To prove a violation of an order of protection by harassment, the State must prove that (1) the defendant committed "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances"; (2) the conduct "would cause a reasonable person emotional distress"; and (3) the conduct did "cause emotional distress to the petitioner."  750 ILCS 60/103(7) (West 1996); 
People v. Karich
, 293 Ill. App. 3d 135, 138 (1997).  The repeated telephoning of the petitioner's residence is presumed to cause emotional distress unless the presumption is rebutted by a preponderance of the evidence.  750 ILCS 60/103(7)(ii) (West 1996).

Defendant does not appear to contest the fact that, if Joan's testimony was accurate, defendant violated the order of protection.  Instead he argues that Joan's testimony was "suspect," as she could not recall details such as where her children were when she received the alleged calls.  Because defendant's account was corroborated by his mother and his daughter, defendant concludes,  no rational jury could have found him guilty beyond a reasonable doubt.  We disagree.

When accounts of events conflict, it is the jury's task to decide which account is more credible, and a reviewing court may not overturn that determination unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  
People v. Fisher
, 281 Ill. App. 3d 395, 402-03 (1996).  Although Joan was unable to describe the precise circumstances under which the alleged calls occurred, a complainant's testimony need not be perfect to support a conviction.  See 
People v. Foley
, 206 Ill. App. 3d 709, 715 (1990).  We observe that Joan testified unequivocally about the identity of the caller and the content of the calls.  Therefore, we cannot say that her testimony was so fraught with inconsistencies and contradictions that the jury was not entitled to believe it.  
Cf.
 
People v. Schott
, 145 Ill. 2d 188, 206-07 (1991) (discrepancies in complainant's testimony about core issue along with her motive to lie left evidence so unsatisfactory as to require reversal of conviction).

Furthermore, although Joan's account was not corroborated, the credible testimony of only one witness is sufficient to convict, even when the accused contradicts it.  
People v. C.H.
, 255 Ill. App. 3d 315, 331 (1993).  Viewing the evidence in the light most favorable to the State, a rational jury could have credited Joan's testimony and found defendant guilty beyond a reasonable doubt.

Karich
, upon which defendant relies, is distinguishable.  There, the trial court found that the State failed to prove the content of the defendant's allegedly harassing calls.  This court held that, as a result, the State did not prove that the calls were not necessary to accomplish a reasonable purpose.  We therefore reversed the defendant's conviction of violating an order of protection.  
Karich
, 293 Ill. App. 3d at 138-39.

Here, however, Joan's testimony was sufficient to allow the jury to conclude that defendant repeatedly called her home and swore at her.  Thus, we hold that the State proved defendant guilty beyond a reasonable doubt of violating an order of protection by harassment.  See 750 ILCS 60/103(7)(ii) (West 1996).

Defendant next argues that he was denied a fair trial when the prosecutor asked him: "But you do call your [ex-]wife a whore, don't you?"  He contends that this question was improper and was so inflammatory that it affected the outcome of the case.  Although defendant did not raise this issue in his posttrial motion, we may review it under the "plain error" doctrine (134 Ill. 2d R. 615(a)).  See 
People v. Davidson
, 235 Ill. App. 3d 605, 610 (1992).  We conclude, however, that no error occurred.

The State may not ask a defense witness questions presuming facts not in evidence as a precursor to impeachment of that witness, unless the State has admissible evidence to substantiate the inquiry.  
People v. Enis
, 139 Ill. 2d 264, 297 (1990).  On the other hand, if a fact is already in evidence, a prosecutor may appropriately challenge a witness's credibility by bringing the fact to the jury's attention.  See 
People v. O'Banner
, 215 Ill. App. 3d 778, 796 (1991).  Contrary to defendant's suggestion, the question at issue here falls into the latter category.

During the State's case, Joan testified that defendant repeatedly called her a whore.  Defendant disputed that assertion, stating that he "would never say any bad words."  The prosecutor was then permitted to attack defendant's credibility, relying upon facts that Joan's testimony had already introduced.  By asking if defendant called Joan a whore, the prosecutor did exactly that.  The question was not improper, and defendant is not entitled to a new trial.

Finally, defendant argues that his crime was improperly classified as a felony.  At the time of the current offense, the applicable statute, which has since been amended, stated in relevant part:

"Violation of an order of protection *** is a Class A misdemeanor.  A second or subsequent offense is a Class 4 felony."  720 ILCS 5/12--30(d) (West 1996).

Defendant had been convicted of violating a previous order of protection in 1996.  His conviction in this case was his second for violating an order of protection.  He contends, however, that the statute's enhancement provision is effective only if a defendant commits two or more violations of the 
same
 order of protection.  Apparently, this is an issue of first impression.  We disagree with defendant's reading of the statute.

The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute.  When an enactment is clear and unambiguous, we may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express.  
People v. Woodard
, 175 Ill. 2d 435, 443 (1997).

The plain language of the statute at issue does not support defendant's interpretation.  On November 22, 1996, defendant was convicted of violating an order of protection.  Subsequently, in this case, defendant was again convicted of violating an order of protection.  By common definition, the current offense is defendant's "second" offense.  To say that a second offense is a felony only if it derives from the same order of protection as the first offense is to read into the statute a condition that it does not express.  We are not permitted to do so.  See 
Woodard
, 175 Ill. 2d at 443.  Therefore, we hold that defendant's second conviction of violating an order of protection was properly declared a Class 4 felony.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.