FIRST DIVISION
December 15, 2008

No. 1-05-3633

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| ARMANDO GUTIERREZ, | ) | Honorable |
| | ) | Lon W. Shultz, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WOLFSON, delivered the opinion of the court:

A jury, in 2002, found defendant, Armando Gutierrez, guilty of murder and attempt murder. The trial court allowed defendant to file a late notice of appeal in November 2005. Under the circumstances of this case, the late notice of appeal gives this court jurisdiction to consider the direct appeal. We find the evidence sufficient to sustain the convictions, and the trial court did not abuse its discretion in sentencing. Therefore we affirm the trial court's judgment.

BACKGROUND

Jorge and Nester Castaneda considered defendant a close friend. Nester gave defendant keys to the gate that protected his parents' home, where Nester and his 14-year-old sister Melissa lived. Defendant also had keys to a safe in Nester's room. The safe held a gun. In October 2000, defendant, 24 years old, married, with two children, told Melissa he found her attractive. Melissa said to Nester, "You better tell him to quit that."

Later that month defendant crashed his truck. He suffered some bruises but no serious injury. On October 25, 2000, he brought the damaged truck over to the Castanedas' home so that he and some friends could repair the truck. The group in the yard with the truck included Nester, Jorge, and their cousin Antonio Castaneda. Around 8 p.m. Nester went inside to lie down because he did not feel well. Defendant and some of the others outside smoked a joint, and defendant had two beers. A little before 10 p.m., defendant, using the gun from the safe, shot Jorge, and then he went inside and shot Nester.

Police arrived on the scene within minutes. Paramedics took Jorge and Nester to hospitals. Only Nester recovered. Melissa told police at the scene defendant shot her brothers. Police took defendant into custody.

One officer at the police station asked defendant about a cut on his forehead. Defendant said he injured his head in the truck accident a few days before the shooting. He claimed to remember nothing of the shootings, but he said he did not shoot Jorge and Nester. Prosecutors charged defendant with the murder of Jorge and the attempt first degree murder of Nester.

At trial Melissa detailed the sexual comments defendant made to her in the weeks before the shooting. She said defendant asked her to be his girlfriend -- and Nester stood close enough to overhear that request. She told defendant he was too old.

Nester said that a few days before the shooting defendant

1-05-3633

said he liked Melissa. Nester and defendant got into an argument and almost came to blows.

Antonio testified as the prosecution's sole eyewitness to the shooting of Jorge. Antonio said some gangbangers drove past shouting gang slogans. Defendant then went in to retrieve the gun from the safe, and he put it on the back of his truck. Defendant, stumbling and mumbling under the influence of the joint and the beers, later headed to the truck, saying he thought he'd go home. Antonio and the others told defendant to sit down, for his own safety. They worried he might crash his truck again. Defendant started cursing as he picked up the gun. Jorge never had a gun. Defendant shot Jorge. Jorge told defendant to stop, but defendant just kept firing. Antonio hid in the garage.

Melissa testified that when she heard the shots she ran to Nester's room. Nester, wearing only his boxer shorts, had just woken up. Defendant kicked open the house door and cursed. Nester asked him to calm down. Both Melissa and Nester swore Nester took no step towards defendant, he only backed away on seeing the gun. Defendant shot Nester three times. Melissa ran upstairs looking for the phone. Defendant ran after her. Defendant grabbed Melissa and said, "I love you" repeatedly. He tried to kiss her and he banged her head against the wall. She told him to stop and put down the gun. Nester struggled up the stairs to grab defendant. Defendant punched Nester and the two fought before defendant ran out of the house with the gun still

in his hand.

Defendant's account of the shooting sharply conflicted with the account the prosecution presented. Defendant admitted he lied to police. He said after the gangbangers passed by, Antonio asked defendant for his keys. Antonio retrieved the gun from the safe and handed it to Jorge. A while later the men in the yard talked about girls. Antonio told Jorge defendant was "trying to hook up" with Melissa. Jorge flew into a rage, saying, "Motherfucker, you better not hook up with my sister. I'll fucking kill you." Jorge then hit defendant's forehead with the butt of the gun. Blood dripped from the gash. Defendant wrestled the gun from Jorge's grasp.

When they got up, with defendant holding the gun, Jorge told Antonio to get him a steel rod from the garage. Antonio dutifully brought a rod about four feet long and three inches thick, and he threw it on the ground by Jorge's feet. Defendant panicked. He started shooting as he ran to the house and to Nester's room, looking for his keys. Nester attacked defendant and defendant shot him. Defendant ran to Melissa and told her not to worry, then he ran back to Jorge and pleaded with Jorge to wake up.

The arresting officer testified that he saw no blood on defendant at the time of the arrest. A photograph of defendant's truck showed a large crack on the driver's side of the windshield.

-4-

1-05-3633

The jury found defendant guilty of murder and attempt murder. The court denied defendant's posttrial motion.

Defendant had two prior convictions for aggravated battery and one prior conviction for possession of a firearm in public housing. In mitigation defendant presented certificates showing his completion of several classes in which he studied religion. Defendant expressed his remorse and described his acceptance of Jesus as his Lord and Savior. As a Christian he recognized the need to accept responsibility for his actions.

The judge recounted the evidence in mitigation and aggravation, then he sentenced defendant to 40 years in prison for murder and 20 years for attempt murder, with the sentences to run consecutively. At the conclusion of the hearing, held on August 21, 2002, defense counsel said:

> "[Defendant's] family has talked to me, and they are not in a position to retain my services for the appeal. I would ask the Court to appoint the *** State Appellate Defender's office for the purpose of preparing his appeal."

The judge responded, "I will do so. The State Appellate Defender is appointed for purposes of appeal."

In March 2003, more than 6 months after sentencing, defendant wrote to the court, asking for the name of his appellate lawyer and "any other information" about the appeal. The record does not show any response to the request. No notice

1-05-3633

of appeal had been filed.

On June 23, 2005, defendant filed a petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)). He claimed appellate counsel provided ineffective assistance because counsel failed to file a timely notice of appeal. The trial court granted the petition and, as relief under section 122-6 of the Act (725 ILCS 5/122-6 (West 2004)), permitted defendant to file a late notice of appeal.

In our initial review we held that we lacked jurisdiction because the late notice of appeal did not comport with Supreme Court Rule 606 (Official Reports Advance Sheet No. 17 (August 16, 2006) R. 606, eff. September 1, 2006). People v. Gutierrez, 376 Ill. App. 3d 182, 876 N.E.2d 233 (2007). Our supreme court later decided People v. Ross, 229 Ill. 2d 255, 891 N.E.2d 865 (2008). The court directed us to vacate our opinion and reconsider the case in light of Ross. We have vacated our opinion and we now reconsider the case.

DECISION

In Ross, as in this case, the defendant did not file a timely notice of appeal. The defendant in Ross filed a postconviction petition alleging his trial counsel provided ineffective assistance. The trial court found that counsel's failure to file a timely notice of appeal constituted ineffective assistance, and as relief the court permitted defendant to file a late notice of appeal. Our supreme court, adopting the reasoning

of <u>People v. Perez</u>, 115 Ill. App. 3d 446, 450 N.E.2d 870 (1983), said:

> "Section 122-6 is flexible enough to include leave to file a late notice of appeal among the remedies available to a trial court in a postconviction proceeding. The Act, thus construed, constitutes a very limited exception to Rule 606. We hold that when a postconviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal." <u>Ross</u>, 229 Ill. 2d at 271.

<u>People v. Torres</u>, 228 Ill. 2d 382, 888 N.E.2d 91 (2008), restricts the reach of <u>Ross</u>. In <u>Torres</u> the defendant pleaded guilty to first degree murder. More than two months after sentencing the defendant wrote to the court asking whether counsel had filed a notice of appeal on his behalf. The defendant informed the court that his counsel left the courtroom directly after sentencing without speaking to defendant and without discussing the possibility of an appeal. The clerk notified the defendant that no one had filed an appeal in his case.

The defendant filed a postconviction petition, contending that counsel provided ineffective assistance when counsel failed to consult with defendant about the possibility of an appeal.

1-05-3633

Our supreme court found a constitutional duty to consult with a defendant about the possibility of an appeal only " 'when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.' " Torres, 228 Ill. 2d at 396, quoting Roe v. Flores-Ortega, 528 U.S. 470, 480, 145 L. Ed. 2d 985, 997, 120 S. Ct. 1029, 1036 (2000). Because the defendant voluntarily pled guilty to reach a quicker end to judicial proceedings, and the case presented no nonfrivolous grounds for appeal, his counsel had no reason to think the defendant should, rationally, want an appeal. And the defendant had not expressed to counsel any interest in appealing. Therefore, the court found that the defendant failed to show counsel had a constitutional duty to consult with the defendant about the possibility of an appeal. Without such a duty, defendant could not show counsel failed to provide constitutionally mandated effective assistance.

Section 122-6 gives a trial court authority to allow a defendant to file a late notice of appeal, even beyond the time constraints of Rule 606, if defense counsel provided ineffective assistance when counsel failed to file the notice of appeal. Ross, 229 Ill. 2d at 271. But the constitution does not require counsel to file a notice of appeal, or even to consult with the defendant about the possibility of an appeal, unless counsel has

-8-

1-05-3633

reason to believe the defendant either actually does or rationally should want to file an appeal. <u>Torres</u>, 228 Ill. 2d at 396.

The record here shows defendant's family sought to appeal from the conviction and sentence. The court explicitly appointed counsel specifically for the appeal. Unlike the defendant in <u>Torres</u>, who heard nothing from the court or counsel to indicate that anyone would represent him for an appeal, defendant here heard the court appoint counsel for the appeal, and he should be able to rely on that appointment.

On this silent record we must presume the court clerk properly notified the State Appellate Defender of the appointment as counsel for defendant. See <u>Lyons v. Ryan</u>, 201 Ill. 2d 529, 539, 780 N.E.2d 1098 (2002) (courts presume public officials perform functions of their offices according to law and do their duties). Appointed counsel never contacted defendant and counsel never filed a notice of appeal on defendant's behalf. In this case, as in <u>Perez</u> (115 Ill. App. 3d at 450), "There is no indication in the record which explains the apparent lack of diligence" by appointed appellate counsel. Following <u>Ross</u> and <u>Perez</u>, we find the trial court properly granted defendant's postconviction petition. The court ordered the correct relief when it permitted defendant to file a late notice of appeal. We have jurisdiction to consider defendant's direct appeal from his 2002 convictions for murder and attempt murder.

-9-

1-05-3633

Now we reach the merits of the direct appeal.  Defendant raises only two issues: the jury should have believed him, rather than Antonio, and the court imposed too severe a sentence.

"When accounts of events conflict, it is the jury's task to decide which account is more credible, and a reviewing court may not overturn that determination unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt."  People v. Wett, 308 Ill. App. 3d 729, 733, 721 N.E.2d 190 (1999).  Defendant contends Antonio's account lacks credibility because people do not shoot close friends without strong provocation.  People usually do not fly into a murderous rage when their friends suggest they may be too inebriated to drive.  Defendant claims his account is more plausible.  He testified that Jorge flew into a rage, bashing a bloody gash into defendant's forehead, when Antonio suggested defendant had made sexual advances towards Jorge's 14-year-old sister.  In defendant's account, after defendant wrested the gun from Jorge's grasp, Jorge deliberately continued his attack, demanding a steel pipe from his cousin.  Jorge's rage scared defendant to the point that he shot his friend repeatedly.  He contends the jury should have found him guilty of only second degree murder because his unreasonable belief in the need to defend himself mitigated the offense.

The weight of the evidence does not permit us to overturn the jury's credibility assessment.  The jury could find defendant

not a credible witness because he lied to police. Defendant's story suffers from the absence of any steel rod from the crime scene. The arresting officer saw no blood on defendant's face. The cracked windshield supports an inference defendant injured his forehead in the truck crash, as he initially told police, and not on the night of the shooting.

Antonio's account, in which defendant suddenly flew into an unprovoked murderous rage, seems credible. Defendant in court admitted he found Melissa attractive. Both Melissa and Nester confirmed that Melissa and her brothers disapproved of defendant's attention to Melissa. Defendant's disappointment at rejection and his awareness of the brothers' disapproval may best explain his alcohol-influenced decision to shoot his friends. Of course the prosecution does not show any motive for the crime. People v. Easley, 148 Ill. 2d 281, 326, 592 N.E.2d 1036 (1992). We defer to the jury's credibility findings. Therefore we affirm the convictions for first degree murder and attempt first degree murder.

Finally, defendant challenges his sentences of 40 and 20 years. He does not dispute the court's imposition of consecutive sentences. See 730 ILCS 5/5-8-4(a)(i) (West 2004). The 40 year sentence fell in the middle of the available range for first degree murder. 730 ILCS 5/5-8-1(a)(1)(a) (West 2004). The 20 year sentence for attempt murder falls 10 years short of the maximum, and only 14 years over the minimum available. 720 ILCS

1-05-3633

5/8-4(c)(1); 730 ILCS 5/5-8-1(a)(3) (West 2004).  Defendant's significant criminal history and his use of a firearm in an essentially unprovoked attack on trusting friends justified a sentence near the middle of the available range.  We cannot say the trial court abused its broad discretion by imposing sentences of 40 and 20 years for the murder and attempt murder.  See People v. Patterson, 217 Ill. 2d 407, 448, 841 N.E.2d 889 (2007).

We affirm defendant's conviction and sentence.

Affirmed.

HOFFMAN, and HALL, JJ., concur.